**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| HEWLETT-PACKARD COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | |
| | § | Cause No. 6:05-CV-456 |
| BYD:SIGN, INC.; BYD:SINE, CO. LTD., | § | |
| a/k/a BYD:SIGN, CO. LTD., a/k/a | § | |
| BYD:SIGN COMPANY JAPAN, LTD, | § | |
| a/k/a BYD:SIGN WORLDWIDE; EYEFI | § | |
| DIGITAL TV, INC.; KATSUMI | § | |
| ELECTRONICS CORP.; J. BRIAN | § | |
| DENNISON; KARL KAMB, JR.; KATSUMI | § | |
| IIZUKA; MARC McEACHERN; DAVID | § | |
| THORSON; POOJITHA PREENA, | § | |
| | § | |
| *Defendants.* | § | |

**ORDER ON MOTIONS TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION AND MOTIONS TO TRANSFER VENUE**

Came on for consideration this day the following pre-answer motions:

(1)    Defendants Poojitha Preena and Idapt Systems LLC' s Motion to Dismiss and Brief in Support (Doc. No. 13);[1]

(2)    Defendants byd:sine, Co. Ltd., a/k/a byd:sign, Co. Ltd., a/k/a byd:sign Company Japan, Ltd, a/k/a byd:sign Worldwide; Eyefi Digital TV, Inc.; and Katsumi Iizuka's Motion to Dismiss and Supporting Brief (Doc. No. 21);

(3)    Defendants byd:sine, Co. Ltd., a/k/a byd:sign, Co. Ltd., a/k/a byd:sign Company Japan, Ltd, a/k/a byd:sign Worldwide; Eyefi Digital TV, Inc.; and Katsumi Iizuka's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) and Supporting Brief (Doc. No. 22);

---

[1] Plaintiff HP has voluntarily dismissed its claims against Defendant Idapt Systems LLC, and Idapt is no longer a party to this action.

     (4)     Defendant Katsumi Electronics Corporation's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 23);

     (5)     Defendant David Thorson's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 31);

     (6)     Defendant David Thorson's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure (Doc. No. 32).

Having considered said motions, the Plaintiff's consolidated Response, and the replies, as well as having heard the argument of counsel at a hearing held before a session of this Court on September 18, 2006, and in the interest of judicial economy, the Court enters the following opinion and order as to the above listed motions.

## I. BACKGROUND

This case arises from certain allegations brought by Plaintiff Hewlett-Packard Corporation ("HP") that natural and corporate citizens of Texas and individuals and entities throughout the United States and in East Asia conspired to usurp HP's corporate opportunities, to defraud HP, to misappropriate HP's trade secrets and proprietary information, to interfere tortiously with HP's contracts, to breach HP's contracts, to compete unfairly with HP, and to conspire and to establish an unlawful enterprise in violation of federal and state laws to HP's detriment. The Amended Complaint alleges that the Defendants utilized their positions of trust at HP to form and operate an enterprise that would compete directly with HP in the flat-panel television market.

HP alleges in its complaint that each of the individual Defendants—J. Brian Dennison ("Dennison"), Karl Kamb, Jr. ("Kamb"), Katsumi Iizuka ("Iizuka"), Marc McEachern ("McEachern"), David Thorson ("Thorson"), and Poojitha Preena ("Preena") (collectively, the "Individual Defendants")—were at one time either employees or contractors working for HP or for

one of its predecessors, Compaq Computer Corporation.  HP alleges that the Individual Defendants conspired to use their positions of trust and confidence at HP to obtain trade secrets and other proprietary information from HP and then illegally funneled those secrets and HP's corporate opportunities to an enterprise founded by several of the Individual Defendants.  HP further alleges that the Defendant companies—byd:sign, Inc., a/k/a byd:sign, L.L.C. (" byd:sign USA"); byd:sine, Co. Ltd., a/k/a byd:sign, Co. Ltd., a/k/a byd:sign Company Japan, Ltd, a/k/a byd:sign Worldwide ("Byd:sign World Wide"); Eyefi Digital TV, Inc. ("Eyefi"); and Katsumi Electronics Corporation ("KEC")—were each formed and/or run by or with the assistance of the Individual Defendants in furtherance of that conspiracy.  In this lawsuit, HP seeks an accounting, imposition of a constructive trust, and monetary damages to compensate HP for the loss that HP has suffered as a result of the Defendants' alleged wrongdoing.

Defendants Dennison, McEachern, and byd:sign USA have answered HP's Complaint.[2] Defendants Iizuka, Thorson, Preena, byd:sign World Wide, Eyefi, and KEC have all filed motions challenging personal jurisdiction, venue, and/or the sufficiency of HP's pleading.  The Court permitted HP to engage in jurisdictional discovery regarding the Defendants' contacts with Texas before considering the Defendants' pre-answer motions.  (*See* Doc. Nos. 73, 81-86, 90.)  The parties have completed that discovery, and Plaintiff HP has filed a Consolidated Response to Defendants' Pre-Answer Motions (Doc. No. 111), to which Plaintiff has attached several hundred pages of discovery which HP claims establishes that the moving Defendants have purposefully directed their activities towards this forum and have maintained continuous and systematic business and personal

---

[2] Defendants Byd:sign World Wide, Eyefi, Iizuka, Kamb, and McEachern have also filed a motion to dismiss certain claims alleged against them pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure (Doc. No. 143).  This motion is not yet ripe for decision.

contacts with this State and that this Court's exercise of jurisdiction over the Defendants' persons is proper.

The Moving Defendants have each replied to HP's Response and maintain that HP's evidence is insufficient to establish this court's jurisdiction over them.

## II.  STANDARD OF REVIEW

When a court does not conduct an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must present sufficient facts to make out a prima facie case for the exercise of jurisdiction over the nonresident defendant.[3]  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).   A court must accept as true all non-conclusory, uncontroverted allegations in the plaintiff's complaint, and it must resolve all factual conflicts in favor of jurisdiction.  *See id.*; *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

## III.  ANALYSIS

Whether the Court has personal jurisdiction over the Moving Defendants depends on whether personal jurisdiction lies under the Texas long-arm statute and the Due Process Clause of the U.S. Constitution.  *Alpine View*, 205 F.3d at 214.   The Texas long-arm statute has been determined to have the same scope as the Due Process Clause.   *Id*; *Central Freight Lines*, 322 F.3d at 380. Therefore, the Court must consider whether exercising jurisdiction over the Moving Defendants is consistent with the Due Process Clause.  *See Alpine View*, 205 F.3d at 214.

---

[3] As noted previously, this Court held a hearing on the Defendants' motions to dismiss for lack of personal jurisdiction on September 18, 2006, but as this Court made clear at that hearing, the hearing was not an evidentiary hearing—the Court heard no sworn testimony and admitted no evidence.  The hearing was for the purpose of hearing oral argument as to the pending motions.

Exercising personal jurisdiction over a non-resident defendant is consistent with due process when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Central Freight Lines*, 322 F.3d at 380 (quoting *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999)).  To find that a defendant has sufficient minimum contacts with the forum state, a plaintiff must establish that the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the forum, "thus invoking the benefits and protections of its laws." *Jones v. Petty-Ray Geophysical Geosource, Inc*., 954 F.2d 1061, 1068 (5th Cir. 1992) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The defendant's activities in the subject forum "must justify a conclusion that the defendant should reasonably anticipate being called into court there." *Id*. (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A defendant's contacts with a forum may either be general or specific. *Central Freight Lines*, 322 F.3d at 381.  Specific jurisdiction arises when a non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  A court may assert general jurisdiction over a non-resident defendant when that defendant's contacts with the forum state are "substantial and 'continuous and systematic' but unrelated to the instant cause of action." *Id*. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

Once a plaintiff meets its burden to establish minimum contacts between a defendant and the forum state, the burden shifts to the defendant challenging jurisdiction to make a "compelling case"

that "the assertion of jurisdiction is unfair and unreasonable." *Id*. at 384.  In determining whether

the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the

nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in

the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate

judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests

of the states in furthering fundamental social policies.  *Id*. (citing *Burger King*, 471 U.S. at 477;

*Asahi Metal Indus. Co. Ltd. v. Superior Court of California*, 480 U.S. 102, 115 (1987)).

### A. Byd:sign World Wide

### 1. General Jurisdiction

Byd:sign World Wide, an entity located in Japan, has sufficient contacts with Texas to

support this court's jurisdiction over it.  Jurisdiction over Byd:sign World Wide is appropriate under

both the general and specific theories of jurisdiction.

HP's evidence supports the exercise of general jurisdiction over Byd:sign World Wide

because, from the founding of Byd:sign USA, a Texas corporation, in 2003 until Byd:sign World

Wide transferred its North American operations to Eyefi in 2005, Byd:sign USA was the exclusive

distributor and sales agent of Byd:sign World Wide products in North America.  HP's evidence

establishes that during this period, Byd:sign World Wide utilized Byd:sign USA's employees and

resources to market Byd:sign World Wide products, which it designed, manufactured, and shipped

to  customers in Texas and the United States.  Indeed, Byd:sign World Wide and its officers

approached J. Brian Dennison, a Texas resident, about forming Byd:sign USA to operate as the

Byd:sign World Wide sales apparatus in the United States.  Moreover, the evidence shows that

Byd:sign World Wide's officers and employees exercised some oversight of Byd:sign USA's

operations and employees, made frequent visits to Byd:sign USA's corporate offices in Houston,

Texas, directed numerous emails to Byd:sign USA's employees, and shipped products to Byd:sign

USA's location in Houston.  Furthermore, in February 2004, Byd:sign World Wide made an 8

million yen[4] loan to Byd:sign USA, and in 2004 Byd:sign World Wide's President, Iizuka, facilitated

an approximately $9 million loan to Byd:sign World Wide and Byd:sign USA.

Byd:sign World Wide challenges HP's evidence regarding the extent of Byd:sign World

Wide's contacts with Texas.  In particular, Byd:sign World Wide states in its reply that "Bydesign

Japan did not make strategic decisions for Byd:sign USA."  HP's evidence, however, does indicate

that Byd:sign World Wide worked very closely with Byd:sign USA until Byd:sign World Wide

ended its relationship with Byd:sign USA and began distributing its products through Eyefi in 2005.

Because the precise extent of Byd:sign World Wide's control over Byd:sign USA is controverted,

and because HP's evidence is sufficient to support the allegation that Byd:sign World Wide

maintained some level of control over Byd:sign USA's operations, the Court resolves this conflict

in favor of jurisdiction.  *See Central Freight Lines*, 322 F.3d at 380.

Byd:sign World Wide also challenges that the evidence does not establish contacts

"substantial enough" to justify subjecting Byd:sign World Wide to jurisdiction in Texas.  Byd:sign

World Wide cites *Central Freight Lines*, wherein the Fifth Circuit found that there was no general

jurisdiction over a New Jersey defendant who routinely arranged for and received shipments to and

from Texas and regularly sent sales people to Texas to develop business, negotiate contracts, and

---

[4] At an exchange rate of 105.55 Japanese yen per dollar, 8 million yen exchanged for $75793.46 on February 10, 2004, the date identified on the loan documents.  *See* Federal Reserve Bank of New York, *Foreign Exchange Rates Historical Search*, http://www.ny.frb.org/markets/fxrates/historical/home.cfm.

service national accounts. *Id*. at 381. The *Central Freight* court found that, though the New Jersey defendant's "contacts with the state of Texas have been, in some sense, 'continuous and systematic,' [the defendant's] activities, *in toto*, are clearly not substantial enough to justify subjecting [the defendant] to suit" in Texas. *Id*.

This case, however, is somewhat different than that in *Central Freight*. In *Central Freight*, the defendant was a New Jersey shipping company whose primary operations were located in New Jersey, and whose shipping business primarily operated in the northeastern United States, and whose contacts with Texas were therefore "not substantial enough" to justify subjecting the defendant to suit in Texas. *Id*. at 379, 381. In this case, however, Byd:sign USA was Byd:sign World Wide's exclusive distributor in North America, and therefore much, if not all of Byd:sign World Wide's business in the United States was in some way connected with Texas. Indeed, the evidence shows that, in many instances, Byd:sign World Wide and Byd:sign USA represented themselves collectively to others as "byd:sign." HP's evidence establishes at least a prima facie showing that Byd:sign World Wide's continuous and systematic contacts with Texas and Byd:sign USA were indeed substantial enough to justify subjecting Byd:sign World Wide to suit in Texas. Byd:sign World Wide's contacts are therefore sufficient to support the exercise of general jurisdiction over it.

## 2. Specific Jurisdiction

Byd:sign World Wide's contacts with Byd:sign USA are also sufficient to support a finding of specific jurisdiction. Specific jurisdiction arises when a non-resident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Central Freight Lines*, 322 F.3d at 381. In this case, Byd:sign World

Wide's contacts with Byd:sign USA form the basis of a significant portion of HP's causes of action, including claims for unfair competition, usurpation of corporate opportunity, tortious interference, and misappropriation of trade secrets.  Byd:sign World Wide shipped products to Byd:sign USA and communicated with Byd:sign USA employees on numerous occasions, allegedly in furtherance of the conspiracy.  Specific jurisdiction over Byd:sign World Wide is appropriate under these facts.

Specific jurisdiction may also be found where a defendant delivers a product into the stream of commerce with the expectation that the product will be purchased by consumers in the forum state. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980).  In the Fifth Circuit, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006); *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993).  Furthermore, when assessing whether jurisdiction arises out of the stream of commerce, the underlying cause of action "must arise out of" the defendant's contacts with the forum state.  *Luv N' Care*, 438 F.3d at 472.

In this case, HP brings causes of action for usurpation of business opportunities and interference with prospective business relationships, among others, and these claims relate directly to the sale of Byd:sign televisions in the United States and Texas.  Moreover, Byd:sign World Wide has sold numerous televisions to Best Buy, a national retail electronics chain, which has in turn sold the same products in Texas, including the Eastern District of Texas.  Byd:sign World Wide sells its televisions to Best Buy, who then resells the televisions under a house brand name.  During discovery, HP subpoenaed business records from Best Buy that reveal that Best Buy has sold over

12,000 Byd:sign World Wide televisions in the state of Texas during the 2006 fiscal year.[5]  The Court finds that it was foreseeable to Byd:sign World Wide that the televisions sold to Best Buy, a nation-wide retailer with numerous stores in Texas, including several in the Eastern District of Texas, would be sold in Texas.  *See Jacobs Chuck Mfg. Co. v. Shandong Weida Machinery Co., Ltd.*, No. 2:05-CV-185, 2005 WL 3299718, at *8 (E.D. Tex. Dec. 5, 2005) (finding that a foreign manufacturer selling to a large, well-known retailer with stores located throughout the United States reasonably expected or knew that its products would be purchased by consumers in Texas).

Accordingly, the Court finds that HP has made a prima facie showing that this court has personal jurisdiction over Byd:sign World Wide.

### 3. Traditional Notions of Fair Play and Substantial Justice

Byd:sign World Wide argues that because its principal place of business is in Tokyo, Japan, it is "extremely burdensome" to require it to defend this case in Texas.  The Court finds, however, that the burden on Byd:sign World Wide of having to defend itself in Texas is no greater than the burden that would exist in any other forum in the United States.  Furthermore, Byd:sign World Wide has not shown that any other State has any more significant connection with this lawsuit than does

---

[5] Byd:sign World Wide objects that Exhibit 113, Best Buy's record of Byd:sign television sets sold in Texas, is an unauthenticated document and should not be considered.  Under Rule 902(11) of the Federal Rules of Evidence, the original or a duplicate of a domestic business record qualifying under Rule 803(6) is self-authenticating "if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record— (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice."  Exhibit 113 is accompanied by an affidavit of the Custodian of Records for Best Buy Enterprises Services, Inc. that confirms that this document satisfies the requirements of a self-authenticating document under Rules 902(11) and 803(6).

Texas, and Texas' interests in the outcome of this case are not significantly different than those of any other state. Accordingly, the Court finds that Byd:sign World Wide has failed to make a compelling case that the assertion of jurisdiction over Byd:sign World Wide is unfair or unreasonable. Accordingly, Byd:sign World Wide's motion to dismiss for lack of personal jurisdiction should be denied.

### B. Katsumi Iizuka

### 1. Specific Jurisdiction

HP alleges that Katsumi Iizuka is subject to specific personal jurisdiction in Texas because Iizuka has purposefully directed activities at Texas and the subject litigation arises from these activities. Specifically, HP alleges that Iizuka traveled to Texas numerous times to conduct Byd:sign business and to solicit business from Texas companies; that Iizuka routinely communicated with Byd:sign USA employees in furtherance of the alleged conspiracy; that Iizuka personally managed the transmission of products to Texas to be sold by Byd:sign USA—products that were allegedly manufactured, designed, and marketed using misappropriated trade secrets, resources, and proprietary information; and that Iizuka individually recruited the Byd:sign USA founder, Brian Dennison, and others to work as agents for Byd:sign World Wide.

Iizuka argues, however, that HP's causes of action do not arise from Iizuka's contacts with Texas, and that as such the fiduciary shield doctrine should operate to protect Iizuka from specific personal jurisdiction arising out of these contacts. The Court disagrees.

In Texas, the "fiduciary shield" doctrine provides that corporate officers are not subject to personal jurisdiction in a foreign forum when their actions are taken in a representative capacity. *See Brown v. General Brick Sales Co., Inc.*, 39 S.W.3d 291, 297–300 (Tex. App.—Fort Worth 2001, no

pet.); *Wright v. Sage Engineering, Inc.*, 137 S.W.3d 238, 250 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).  Several courts have held, however, that the fiduciary shield doctrine only applies to prevent general jurisdiction, and does not protect an officer from the exercise of specific personal jurisdiction as to intentional torts or fraudulent acts for which the officer may be held individually liable. *Wright*, 137 S.W.3d at 250; *SITQ E.U., Inc. v. Reata Restaurants, Inc.*, 111 S.W.3d 638 (Tex. App.—Fort Worth 2003, pet. denied).  As Iizuka correctly notes in his reply, the instant cause of action should be related to the activities HP cites as contacts giving rise to jurisdiction.  *See D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 548 (5th Cir. 1985) (jurisdiction found where cause of action was directly related to the tortious activities the plaintiff cited as contacts that gave rise to personal jurisdiction).  Accordingly, Iizuka's personal contacts with Texas while doing business for Byd:sign World Wide may support specific jurisdiction over Iizuka only if those contacts are part of an intentional tort or fraudulent act that gives rise to or relates to the instant causes of action.

In this case, HP's evidence establishes that Iizuka did indeed participate closely in the founding and operation of Byd:sign USA, and that Iizuka traveled to Texas frequently to solicit business on behalf of Byd:sign World Wide and USA.  HP further alleges that these activities were conducted in furtherance of the conspiracy to wrongfully obtain and misappropriate HP's trade secrets and other proprietary information.  This allegation, which forms the substance of HP's claim against Iizuka, is sufficient to establish a prima facie case that these activities were indeed part of the tortious conduct that is related to the subject of the present litigation.  As noted at the outset, the Court should resolve all contested issues of fact in favor of jurisdiction.  *Central Freight Lines*, 322 F.3d at 380. Accordingly, specific jurisdiction over Iizuka is appropriate under the asserted facts.

Because the Court finds that HP has made a prima facie case that specific jurisdiction is appropriate over Iizuka, the Court declines to consider whether this court has general jurisdiction over Iizuka.

## 2. Traditional Notions of Fair Play and Substantial Justice

Iizuka argues that it is unfair and unreasonable for him to have to defend HP's claims in Texas because he is a Japanese citizen and it would be "extremely difficult" to constantly have to commute to Texas from Japan to attend court proceedings and to participate in discovery. The evidence produced during jurisdictional discovery reveals, however, that Mr. Iizuka travels to the United States and to Texas quite frequently for both business and pleasure. For this reason the Court finds that Iizuka has failed to make a compelling case that it is unfair and unreasonable for him to have to defend this lawsuit in Texas. Accordingly, Mr. Iizuka's motion to dismiss for lack of personal jurisdiction should be denied.

## C.  Katsumi Electronics Corporation

HP alleges that KEC is subject to personal jurisdiction under the stream of commerce theory. The Court, however, disagrees and finds that the Court lacks personal jurisdiction over KEC. HP alleges that KEC "placed thousands of televisions into the stream of commerce with Best Buy, knowing, intending, and reasonably foreseeing that Best Buy would sell those products in Texas." HP's evidence, however, does not support this assertion. The only link between KEC and the sale of Byd:sign televisions through Best Buy is a Letter of Intent executed by Best Buy, but which was later superseded by a Vendor Agreement between Byd:sign World Wide and Best Buy. The Deposition of Peter Hong, KEC's president, attached to KEC's motion to dismiss, indicates that, though Hong personally signed the Vendor Agreement on behalf of Byd:sign World Wide, Hong did

so under a power of attorney granted for that purpose and neither he nor KEC are parties to the agreement.  Other than the stream of commerce allegations, HP asserts no other facts sufficient to establish personal jurisdiction over KEC.  HP has failed to establish its prima facie case that KEC purposefully availed itself of the privilege of conducting activities in Texas or that KEC's activities in Texas justify a conclusion that KEC should reasonably anticipate being called into court in Texas. *Jones*, 954 F.2d at 1068.  Accordingly, the Court finds that KEC's motion to dismiss for lack of personal jurisdiction should be granted.

### D.  Eyefi

### 1. Specific Jurisdiction

Eyefi is subject to specific personal jurisdiction in Texas.  HP's evidence establishes that Eyefi is a wholly owned subsidiary of Byd:sign World Wide that was formed in 2005 to succeed Byd:sign USA as Byd:sign World Wide's North American sales agent.  Accordingly, Eyefi has had multiple contacts with Texas as it assumed many of Byd:sign USA's assets, inventory, and customer contacts.  Eyefi directly assumed responsibility for Byd:sign USA's largest customer, ADI.  Significantly, David Thorson, a former HP employee and Eyefi's president, was in contact with Byd:sign's employees in Texas concerning the details of the transition of ADI's account and with Marc Chilcoat, a Texas resident and employee or agent of Eyefi, concerning potential customers.

These contacts with Texas were purposeful and are related to HP's causes of action for conspiracy and misappropriation of corporate opportunities and trade secrets.  Furthermore, they establish that Eyefi could reasonably expect to be haled into a Texas court over matters relating to Eyefi's contact with Byd:sign USA or Eyefi's relationship with Mr. Chilcoat.  Accordingly, HP has established a prima facie case that this court has specific personal jurisdiction over Eyefi.

**2. Traditional Notions of Fair Play and Substantial Justice**

Eyefi argues that many of the documents needed to defend itself are located in Japan and are in Japanese, and that it is unfair and unreasonable to have to transport these documents to Texas, and that it would be burdensome on a jury to have to translate the documents into English.  As with Byd:sign World Wide, however, the Court finds that this burden is not greater for Texas than it would be in any other forum located in the United States, and would be lessened by Eyefi's location in Nevada compared to Japan.  For this reason, as well as the reasons articulated in the discussion of Byd:sign World Wide, the Court finds that Eyefi has failed to provide a compelling reason why litigating in Texas would be unfair or unreasonable.  Eyefi's motion to dismiss should therefore be denied.

**E.  David Thorson**

**1.  Specific Jurisdiction**

David Thorson is likewise amenable to specific jurisdiction in Texas.  HP alleges that Thorson began managing Eyefi while still employed by HP and began directing contacts with Texas as Eyefi assumed Byd:sign USA's role as Byd:sign World Wide's North American agent.  These contacts with Texas were directly related to HP's cause of action, in that they were in furtherance of the alleged conspiracy and tortious conduct that gives rise to HP's claims.  Thorson purposefully directed contacts to Byd:sign USA and Texas while he remained an employee of HP.  As noted in relation to Iizuka, the fiduciary shield doctrine does not protect Thorson for his contacts with Texas on behalf of Eyefi because his contacts are part of the alleged individual tortious conduct.  Accordingly, HP has made a prima facie showing that this court has specific jurisdiction over Thorson.

## 2. Traditional Notions of Fair Play and Substantial Justice

Thorson argues that to defend this lawsuit in Texas would be unduly burdensome, extremely difficult and time consuming, and would force Thorson to incur substantial costs and inconvenience. Given the contacts Thorson and Eyefi have already established with Texas, it is not unreasonable or unfair to have Thorson defend this suit in Texas.  Furthermore, the interests of efficient relief, and the lack of a showing that any other forum has a more compelling interest in the outcome of the litigation than Texas, the Court finds that Thorson has failed to make a compelling case that jurisdiction in Texas is unfair or unreasonable.

## 3.  RICO's Nationwide Service Provision

HP further alleges that jurisdiction is conferred over Thorson by the RICO statute's nationwide service provisions. *See* 18 U.S.C. § 1965.  As Thorson has admitted, nationwide service of process under RICO is appropriate if each of two elements are met.  First, the RICO statute provides for nationwide service of process when the court has personal jurisdiction over one of the alleged RICO conspirators in a multi-district conspiracy.  *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 605–06 (E.D. Tex. 1994).  In this case, three of the alleged RICO conspirators—Kamb, Dennison, and McEachern—have consented to personal jurisdiction before this court.  Moreover, Defendant Dennison is a Texas resident over whom personal jurisdiction is undoubtedly proper.

Second, RICO requires that the plaintiff show that "the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. 1965(b).  Though the Fifth Circuit has not commented on what set of facts would satisfy "the ends of justice" requirement, several other courts have opined as to what would satisfy "the ends of justice."  Several courts, for

instance, have held that "the ends of justice" require a showing that there be no other district court that would have personal jurisdiction over all of the alleged RICO conspirators. *See, e.g., Butcher's Union*, 788 F.2d at 539 (9th Cir. 1986); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71–72 (2d Cir. 1998).   Other courts, however, have held that whether there is no other possible forum in which the action could be brought is but one factor to take into consideration, among others. *See Miller Brewing Co. v. Landau*, 616 F. Supp. 1285, 1290 (E.D. Wis. 1985) (whether an alternative forum exists is at least one factor that should be considered as part of an ends of justice analysis); *Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp. 487, 491–92 (D. Del. 1991) (whether other district courts would have proper venue and personal jurisdiction over all defendants was just one of three factors considered in assessing the ends of justice); *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 590 F. Supp. 1453, 1459 (E.D.N.Y. 1984); *Farmers Bank of Del. v. Bell Mortgage Corp.*, 452 F. Supp. 1278, 1282 n.8 (D. Del. 1978); *United Power Ass'n, Inc. v. L.K. Comstock & Co.*, No. 3-89 Civ. 766, 1992 WL 402906, at *3 (D. Minn. Oct. 27, 1992).   HP argues that nationwide service of process is appropriate in this case because "it is unclear whether a Defendant such as Dennison (a Texas resident) would be subject to personal jurisdiction in California, Nevada, or any other possible forum." (Pl.'s Resp. 33.)   HP further argues that "the absence of an alternative venue is merely illustrative of the kind of circumstances that will support nationwide service, not an exclusive requirement of the statute." (Pl.'s Sur-Reply to D. Thorson's Reply 3.)   The Court agrees.

The *Butcher's Union* court said that "Congress intended the 'ends of justice' provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." 788 F.2d at 539.   The *Butcher's* court cited *Farmers Bank of State of Del. v. Bell Mortg. Corp.* for this proposition.   577 F. Supp. 34, 35 (D.C. Del. 1978).   In *Farmer's Bank*, the court

concluded that "[t]here are no facts in the record which would suggest that" the diverse defendants were all subject to venue in a single state. *Id*. The *Farmer's Bank* court went on to state, however, that "the interests of justice and judicial economy dictate that the whole action be tried in one Court," and that Section 1965(b) was instituted to aid these interests. *Id*. Accordingly, the *Farmer's Bank* court concluded that, "[g]iven the desirability of having the whole action litigated in one court," and considering that venue and jurisdiction over most of the other defendants was proper, "the ends of justice require[d] that the Court permit [the defendant] to be brought before it as a defendant pursuant to 18 U.S.C. § 1965(b)." *Id*.

Similarly, Judge Sanders in the Northern District of Texas found the exercise of jurisdiction over RICO defendants was appropriate under 18 U.S.C. § 1965(b) where it was "unlikely" that an alternative forum was available in which jurisdiction would be proper as to all defendants. *Johnson v. Investacorp, Inc.*, No. 3-89-2607-H, 1990 WL 25034, at *2 (N.D. Tex. Jan. 31, 1990).

In this case, where jurisdiction is proper over four of the RICO defendants—Kamb, Dennison, McEachern, and Iizuka—and where there is no evidence that a California court would have jurisdiction over Defendant Dennison,[6] the ends of justice require a finding that personal

---

[6] Thorson challenges that Dennison's employment with HP, a California company, and his close working relationship with Defendant Preena, a California resident, make it "possible that the United States District Court for the Northern District of California would have personal jurisdiction over Dennison." (Thorson's Pers. Juris. Reply 10.) There are no facts on the record, however, that Dennison has the necessary minimum contacts with California to establish that personal jurisdiction or venue as to Dennison is proper in California. Furthermore, Dennison's employment with a California company, by itself, is not necessarily sufficient to establish personal jurisdiction over Dennison in California. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.")

jurisdiction exists over Thorson pursuant to 18 U.S.C. § 1965(b).  Thorson's motion to dismiss for lack of personal jurisdiction should therefore be denied.

### F.  Poojitha Preena

Having found that personal jurisdiction over the RICO conspirators is appropriate, the Court declines to consider Preena's minimum contacts with Texas and concludes that the exercise of personal jurisdiction over Poojitha Preena is proper under 18 U.S.C. § 1965(b).  Consequently, Preena's motion to dismiss for lack of personal jurisdiction should be denied.

## IV.  MOTIONS TO TRANSFER VENUE

### A.  Motions to Transfer Venue Pursuant to 28 U.S.C. § 1406(a)

Having found that this court's the exercise of personal jurisdiction over Defendants Byd:sign World Wide, Iizuka, Eyefi, Preena, and Thorson is appropriate, the Court next considers the various motions to transfer venue.

Defendants Preena and Thorson assert that venue in the Eastern District of Texas is improper and that this case should be transferred to the Northern District of California.  If a plaintiff commences an action in the wrong district or division, a federal court must, upon timely motion, dismiss the action for improper venue, or if it be in the interest of justice, transfer the case to any district or division where it could have been brought.  28 U.S.C. § 1406(a).  Though the cases seem to diverge on the question of which party bears the burden of showing that venue is either proper or improper, "the clear weight of authority, is that, when objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue."  15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3826 (2d. ed. 1986).  *See Youman v. Newfield Exploration Co.*, 977 F. Supp. 809, 810 (E.D. Tex. 1997); *Langton v. Cbeyond Communication, L.L.C.*, 282 F.

Supp. 2d 504, 508 (E.D. Tex. 2003); *McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001).

> Where jurisdiction is based on a federal cause of action, venue is only proper in
>
> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  Because the Defendants in this case reside in different states, 28 U.S.C. § 1391(b)(1) does not apply.  Furthermore, HP does not argue that there is no district in which this action may otherwise be brought.  *See* 28 U.S.C. § 1391(b)(3).  Accordingly, the Court must decide whether the Eastern District of Texas is a district where a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b)(2).

HP argues that a substantial part of the events at issue as well as a substantial part of the property that is the subject of this action is located in this district because more than 3,200 Byd:sign-made television sets have been sold at Best Buy stores located in this district.[7]  HP argues that because these television sets are the result of wrongful sales, their sale in this district constitutes a substantial part of the events at issue, and the television sets themselves are a substantial part of the property that is the subject of this action.  Accepting the undisputed facts and allegations as true, the Court finds that HP has met its burden as to venue in the Eastern District of Texas. *See McCaskey*, 133 F. Supp. 2d at 523 (when assessing venue, the court should accept uncontroverted facts in the

---

[7] HP relies on Exhibit 113, a print-out of byd:sign televisions sold by Best Buys stores in Texas.  HP stated during oral argument that, to obtain the number of televisions sold in the Eastern District of Texas, it has obtained Best Buy store codes from http://www.bestbuy.com and has cross-referenced these store codes with Exhibit 113 to determine which televisions were sold at particular stores.

complaint as true and resolve conflicts in the evidence in the plaintiff's favor).  Preena's and

Thorson's motions challenging improper venue should be denied.

### B. Motions to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)

As an alternative to their motions to dismiss for lack of personal jurisdiction, Defendants

Byd:sign World Wide, Eyefi, Iizuka, and Thorson move the Court to transfer this action to the

Northern District of California for the convenience of the parties pursuant to 28 U.S.C. § 1404(a).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer

any civil action to any other district or division where [the case] might have been brought."  28

U.S.C. § 1404(a).  It is within the sound discretion of the court to decide whether to transfer venue

under § 1404.  *See* 28 U.S.C. § 1404(b); *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528

(5th Cir.1988).

Courts generally balance (a) the convenience of the litigants and (b) the public interests in

the fair and efficient administration of justice when deciding whether transfer under §1404 is

appropriate.  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001) (citing *Robertson

v. Kiamichi RR Co., L.L.C* ., 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999); *Singleton v. Volkswagen of

America, Inc.*, No. 2:06-CV-222, 2006 WL 2634768, at *1 (E.D. Tex. Sept. 12, 2006).  Convenience

factors often include: (1) plaintiff's choice of forum; (2) convenience of parties and witnesses; (3)

place of the alleged wrong; (4) location of counsel; (5) cost of obtaining the attendance of witnesses;

(6) accessibility and location of sources of proof; and (7) possibility of delay and prejudice if transfer

is granted.  *See Hanby,* 14 F. Supp. 2d at 676–77.  Public interest factors often include: (1)

administrative difficulties caused by court congestion; (2) local interest in adjudicating local

disputes; (3) unfairness of burdening citizens in an unrelated forum with jury duty; and (4) avoidance

of unnecessary problems in conflict of laws. *See id*. at 677.

Convenience factors in this case either weigh in favor of or are neutral as to venue. First, HP

has chosen this forum.  Second, though transfer to California may ease the burden on several of the

defendants located in the western portions of the United States and in Japan, other witnesses in

Texas, Massachusetts, and Minnesota would bear potentially greater burdens.  Transferring venue

would only shift the inconvenience of forum from some parties and witnesses  to other parties and

witnesses.  Commercial air service is available directly to Tyler via Dallas/Fort Worth International

Airport, which offers direct flights from locations in the United States and around the world.

Moreover, because the witnesses and parties in this case are so widely distributed both in the United

States and across the globe, it is not clear that transferring this case to California would greatly

increase the convenience of the parties and witnesses, if at all.  Third, the alleged wrong to HP,

though certainly located to some extent in the Northern District of California, is also alleged to be

connected with Tyler because the Defendants' allegedly deprived HP of potential revenues by selling

televisions in this district.  Fourth, counsel for the parties are located in Washington, D.C., Las

Vegas, Palo Alto, Dallas, and Houston, and transferring this action to the Northern District of

California would have little or no positive impact on the burden on counsel.  As to the fifth factor,

the cost of obtaining the attendance of witnesses, no evidence has been produced to show that there

is any greater cost associated with securing the attendance of witnesses at depositions and the like,

especially given that witnesses are widely dispersed.  As to the accessibility and location of sources

of proof, again, the evidence is distributed across wide distances, and as has been shown during

preliminary discovery on personal jurisdiction, the use and aid of modern technological conveniences

greatly reduces, if not eliminates, many difficulties associated with gathering evidence.  Finally, the possibility of delay and prejudice if a transfer is granted weighs in favor of maintaining venue in this forum, especially after the parties have spent considerable time and resources on the issue of personal jurisdiction in this court.  As a whole, the above convenience factors weigh in favor of maintaining venue in this court.

As to the public interest factors, court congestion is not a substantial problem for this court, thanks in part to this district's broad discovery rules and other factors that are conducive to a relatively speedy docket.  The second factor, the local interest in adjudicating this dispute, weighs somewhat against maintaining venue, largely because, when compared with the Northern District of California, relatively few individuals are employed by or have a relationship with HP in this district.  As to the third factor, the unfairness of burdening citizens in an unrelated forum with jury duty, there is no evidence, first, that this forum is "unrelated," and second, that jury duty would be any greater burden for jurors in this district than it would be for those in any other district.  Finally, this court is capable of applying the relevant law.  Accordingly, the public interest factors do not weigh heavily, if at all, in favor of transfer.  For these reasons, the motions to transfer venue pursuant to 28 U.S.C. § 1404 should be denied.

## V.  CONCLUSION

For the above stated reasons, Defendant Katsumi Electronics Corporation's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 23) is hereby **GRANTED** and all claims against Katsumi Electronics Corporation are **DISMISSED** without prejudice.  It is further

**ORDERED** that the Defendant Preena's Motion to Dismiss (Doc. No. 13); Defendants Byd:sign World Wide, Eyefi, and Iizuka's Motion to Dismiss (Doc. No. 21); Defendants Byd:sign

World Wide, Eyefi, and Iizuka's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc.

No. 22); Defendant Thorson's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. No.

31); and Defendant Thorson's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(3) of the

Federal Rules of Civil Procedure (Doc. No. 32) are hereby **DENIED**.

       **It is so ORDERED.**

       **SIGNED this 28th day of September, 2006.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE