**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| HEWLETT-PACKARD COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | |
| | § | Cause No. 6:05-CV-456 |
| BYD:SIGN, INC.; BYD:SINE, CO. LTD., | § | |
| a/k/a BYD:SIGN, CO. LTD., a/k/a | § | |
| BYD:SIGN COMPANY JAPAN, LTD, | § | |
| a/k/a BYD:SIGN WORLDWIDE; EYEFI | § | |
| DIGITAL TV, INC.; KATSUMI | § | |
| ELECTRONICS CORP.; J. BRIAN | § | |
| DENNISON; KARL KAMB, JR.; | § | |
| KATSUMI IIZUKA; MARC | § | |
| McEACHERN; DAVID THORSON; | § | |
| POOJITHA PREENA, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER ON MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Came on for consideration this day the Motion to Dismiss Plaintiff's First Amended

Complaint and Supporting Brief filed by Defendants Byd:sign Japan, Eyefi, Katsumi Iizuka,

Karl Kamb, Jr., and Marc McEachern (Doc. No. 143), the Joinder in Motion to Dismiss

Plaintiff's First Amended Complaint filed by Defendant David Thorson (Doc. No. 149), and

the parties' responses and replies .  The Court is of the opinion that the Defendants' motion

to dismiss should be denied in its entirety.

# I. Background

HP alleges in its complaint that each of the individual Defendants—J. Brian Dennison ("Dennison"), Karl Kamb, Jr. ("Kamb"), Katsumi Iizuka ("Iizuka"), Marc McEachern ("McEachern"), David Thorson ("Thorson"), and Poojitha Preena ("Preena") (collectively, the "Individual Defendants")—were at one time either employees or contractors working for HP or for one of its predecessors, Compaq Computer Corporation.   HP alleges that Defendants Kamb, McEachern, and Thorson agreed to abide by certain ethical standards as set out in a document entitled "HP's Standards of Business Conduct."   The Standards of Business Conduct establish certain standards of behavior that are not acceptable for HP employees, including outside work for a competitor, usurpation of corporate opportunities, or use of HP resources and computer systems for outside employment or personal gain.   HP alleges that the Individual Defendants conspired to use their positions of trust and confidence at HP to obtain trade secrets and other proprietary information from HP and then illegally funneled those secrets and HP's corporate opportunities to an enterprise founded by several of the Individual Defendants.   HP further alleges that the Defendant companies—byd:sign, Inc., a/k/a byd:sign, L.L.C. (" byd:sign USA"); byd:sine, Co. Ltd., a/k/a byd:sign, Co. Ltd., a/k/a byd:sign Company Japan, Ltd, a/k/a byd:sign Worldwide ("Byd:sign Japan"); and Eyefi Digital TV, Inc. ("Eyefi")—were each formed and/or run by or with the assistance of the Individual Defendants in furtherance of that conspiracy.   In this lawsuit, HP seeks an

accounting, imposition of a constructive trust, and monetary damages to compensate HP for the loss that HP has suffered as a result of the Defendants' alleged wrongdoing.

Based on these allegations, HP brings claims against the Defendants for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Lanham Act, the Computer Fraud and Abuse Act ("CFAA"), and various common law torts, including fraud and breach of fiduciary duty.

Defendants Dennison, McEachern, Preena, and byd:sign USA have answered HP's Complaint.

Defendants Byd:sign Japan, Eyefi, Iizuka, McEachern, Thorson, and Kamb (the "Moving Defendants") have filed the subject motion to dismiss in which they challenge the sufficiency of Plaintiff HP's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure with regard to HP's claims for civil RICO violation, fraud, breach of fiduciary duty, constructive fraud, Lanham Act unfair competition, and civil CFAA violations.  The Defendants also argue that HP's fraud claims fail to comply with Rule 9(b)'s requirement that averments of fraud be stated with particularity.

## II.  Legal Standard for Motion to Dismiss

Generally, in appraising the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *Lowrey*

*v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  In considering motions to dismiss, the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.  *Lowrey*, 117 F.3d at 247 (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)).  Furthermore, Rule 12(b)(6) motions are "viewed with disfavor and [are] rarely granted." *Lowrey*, 117 F.3d at 247 (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

When assessing whether a fraud claim should be dismissed for lack of particularity, the Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." *Plotkin v. IP Axess Inc.*  407 F.3d 690, 696 (5th Cir. 2005) (citing *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)).  That is, "the who, what, when, and where must be laid out before access to the discovery process is granted." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  Rule 9(b)'s particularity requirement applies to RICO predicates of mail and wire fraud as well as to state law claims of fraud.  *Id.* at 177.

### III.  HP Adequately Alleges Civil RICO Causes of Action

The Defendants argue that HP's Civil RICO claim is deficient and should be dismissed because it fails to adequately identify the predicate fraudulent "racketeering activities" with particularity, fails to adequately identify an "enterprise," fails to allege the

requisite continuity, and fails to allege the appropriate causal relationship between the alleged

RICO predicate acts and HP's damages.  The Court disagrees, however, and finds that HP's

civil RICO claim is sufficient to survive the Defendant's motion to dismiss.

### A.  *HP's RICO Allegations*

HP alleges that the Defendants conspired to use certain Individual Defendants'

positions of influence within HP to help byd:sign enter the flat-panel television market,

without ever disclosing to HP the Defendants' personal interests in the company.  (Compl.

¶ 59.)  HP alleges that the Defendants engaged in a scheme or artifice to defraud HP

beginning in October 2003 and continuing through the second quarter of 2004.  The alleged

scheme to defraud involved the use of positions of influence held by Kamb and others within

HP to hire byd:sign Japan to perform consulting services for HP.  (Compl. ¶ 60.)  HP alleges

that byd:sign Japan "issued, through the use of the mail, facsimile, and/or computer, multiple

invoices to HP totaling almost a quarter of a million dollars."  (Id.)  HP further alleges that

the Defendants structured the invoices and payments such that Kamb was able to use his

payment authorization to approve payment without acquiring further approval. (Id.) HP also

alleges that the byd:sign invoices included wire transfer instructions for payment, which HP

followed when it tendered payment from December, 2003 through the second quarter of

2004.  (Id.)  HP alleges that much of the work performed by byd:sign benefitted only

byd:sign and not HP, and that by approving the multiple payments to byd:sign, Kamb was

"siphoning research and development funds from HP for the benefit of byd:sign."  (Id.)  HP

alleges that Kamb failed to inform HP of his interest in the byd:sign enterprise during this period.  (Id.)  HP alleges that in September 2004, Defendants Kamb and Preena arranged for byd:sign USA to sell several televisions to HP without revealing either defendants' interest in the byd:sign enterprise. (Compl. ¶ 71).

HP further alleges that, on or about August 5, 2005, Kamb and Thorson conspired to fraudulently obtain an HP printer from one of HP's labs through the use of an interstate mail carrier.  (Compl. ¶¶ 77–79.)  HP alleges that Thorson obtained the HP printer under the pretext that it would be used for HP-related tasks, and sent an e-mail to HP employees in California requesting that they send the printer via Federal Express to Kamb's home in Las Vegas for the purpose of gaining an advantage for investigating and developing new lines of business that Defendant Eyefi sought to enter. (Compl. ¶ 77.)  HP alleges that Thorson also requested that a member of HP's printer products division send him proprietary product and marketing information regarding HP manufactured printers.  (Compl. ¶ 79.)  HP alleges that Thorson sent an e-mail to Kamb containing this information, and that Kamb then forwarded this information to his byd:sign enterprise account.  (Id.)

## B.  *Elements of a Civil RICO Claim*

HP claims that the Defendants' actions violate all four subsections of RICO § 1962. 18 U.S.C. § 1962.[1]  All subsections of § 1962 require that there be (1) a person who engages

---

[1] The court in *In re Burzynski* restated the four subsections of § 1962 as follows:

(a)      a person who has received income from a pattern of racketeering cannot
          invest that income in an enterprise.

(b)      a person cannot acquire or maintain an interest in an enterprise through a

in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988)).  In this case, HP alleges the following facts in support of its civil RICO Cliam: (1) certain persons, including Moving Defendants Kamb, Iizuka, and Thorson, engaged in (2) a pattern of racketeering activity, namely mail and wire fraud, (3) when establishing, conducting, and controlling  the "byd:sign enterprise."

### 1. HP Pleads the Predicate Fraudulent Acts with Particularity

The Moving Defendants first argue that HP has failed to adequately plead the predicate fraudulent acts with sufficient Rule 9(b) particularity.  To prove a "pattern of racketeering activity," a plaintiff must show that the defendant committed certain (1) predicate acts (i.e., the requisite racketeering activity), and must show (2) a pattern of such acts. *In re Burzynski*,  989 F.2d 733, 742 (5th Cir. 1993).

The predicate acts of racketeering activity alleged in HP's complaint are mail and wire fraud. *See* 18 U.S.C. § 1961(1)(B).  To state a claim for mail or wire fraud, a plaintiff must establish three elements: (1) a scheme or artifice to defraud or to obtain money or property by means of false pretenses, representations, or promises; (2) a use of the interstate mails or

---

                    pattern of racketeering.

(c)      a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering.

(d)      a person cannot conspire to violate subsections (a), (b), or (c).

989 F.2d 733, 741 (5th Cir. 1993).

wires for the purpose of executing the scheme; and (3) a specific intent to defraud either by revising, participating in, or abetting the scheme.  18 U.S.C. §§ 1341, 1343; *see United States v. Davis*, 752 F.2d 963, 970 (5th Cir. 1985) (setting out elements of mail fraud); *Smith v. Ayres*, 845 F.2d 1360, 1366 (5th Cir. 1988) (setting out elements of wire fraud).

Under the first element, HP must allege a scheme or artifice to defraud or to obtain money by means of false pretense, representations, or promises.  The elements of fraud include (1) a misstatement or omission (2) of material fact (3) made with the intent to defraud (4) on which the plaintiff relied and (5) which proximately caused the plaintiff's injury. *Williams*, 112 F.3d at 177.  As stated before, when a civil RICO claim is predicated on alleged acts of mail and wire fraud, the circumstances constituting fraud must be pleaded with particularity.  *Tel-Phonic Serv., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).  This Rule 9(b) heightened level of specificity "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill . . . and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

Here, HP has pleaded the elements of the alleged mail and wire fraud with particularity: HP has set out *who* was involved in the scheme to defraud—Kamb, Thorson, and Iizuka; *when* the statements were made—numerous times from 2003 through August 5, 2005; *what* statements were made—that byd:sign had performed certain services and that the printer and corresponding proprietary information were for HP related tasks; and *why* the

statements were fraudulent—byd:sign had not actually performed any services for HP's benefit, and the printer was not being acquired for HP-related tasks.  HP also alleges that the Defendants' possessed the specific intent to defraud HP by virtue of their misstatements, that HP relied on the Defendants' statements, and that this reliance resulted in certain damages to HP.

While it is true that HP has not pleaded the details of each individual mail or wire transaction with particularity, HP certainly has pleaded the details of the underlying fraudulent scheme in such a way as to provide the Defendants with notice of the Plaintiff's claims. *See Tuchman*, 14 F.3d at 1067.  Moreover, courts have found that where a course of conduct occurs over an extended  period of time, the plaintiff need not allege in detail the facts of each transaction of the fraudulent scheme.  *See United States ex rel. King v. Alcon Laboratories, Inc.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005) ("in cases where the plaintiff is alleging that the fraud occurred over a multi-year period, the plaintiff is not required to allege all facts supporting each and every instance when each defendant engaged in fraud"); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1039 (S.D. Tex. 1998) (where allegations of fraudulent conduct are numerous or take place over an extended period of time, less specificity is required to satisfy the pleading requirements of Rule 9(b)).  Accordingly, the Court finds that HP has properly pleaded the predicate acts of mail and wire fraud, and has done so with sufficient particularity to survive the Defendants' motion to dismiss.

## 2.  HP Alleges a Pattern of Racketeering Activities

The Moving Defendants next challenge whether HP has adequately alleged that the pattern of racketeering activities contained the necessary continuity required to survive a motion to dismiss.  To demonstrate a "pattern of racketeering activity," a plaintiff must prove at least two predicate acts of racketeering that are related and amount to or threaten long-term criminal activity.  *Tel-Phonic Serv., Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1139–40 (5th Cir. 1992) (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238 (1989)).  That is, the predicate acts must be *related* and *continuous*.  *Id.* at 1140.  In this context, "'[c]ontinuity' refers 'either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'"  *Id.* (quoting *H.J., Inc.*, 492 U.S. at 241).  It is not necessary that there be a "specific threat of repetition" or that the predicate acts are now a part of Kamb's or Iizuka's "regular way of doing business" as argued by Defendants.  Rather, it is only necessary that HP allege that the predicate acts occurred over a period of time sufficient to amount to long-term criminal activity.  *See H.J., Inc.*, 493 U.S. at 241, 242 (stating that continuity may refer to a closed period of repeated conduct over a substantial period of time).

In this case, HP has pleaded the elements necessary to establish a pattern of racketeering activity.  First, the various predicate acts are *related* in that they all endeavor to use individual contacts within HP to benefit the byd:sign enterprise at HP's expense.  Furthermore, the predicate acts have sufficient *continuity* because they occurred over a

significant period of time (from October 2003 through August 2005) and amount to long-term criminal activity.  HP's allegations of related and continuous conduct are sufficient to endure the Defendants' motion to dismiss.

### 3.  HP Alleges the Existence of a RICO Enterprise

The Moving Defendants also challenge whether HP has adequately pleaded the existence of a RICO "enterprise" by failing to identify specific acts by specific defendants. A RICO "enterprise" may consist of either a legal entity or an "association-in-fact" enterprise.  18 U.S.C. § 1961(4); *United States v. Turkette*, 452 U.S. 576 (1981); *In re Burzynski*, 989 F.2d at 741.  Furthermore, a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages."  *Old Timer Enter. v. International Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989) (quoting *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987)).

In this case, HP has alleged that the Defendants created several legal entities and that the Defendants have joined the entities into an "association in fact" enterprise—referred to in the complaint as the "byd:sign enterprise"—whose alleged business purpose is to market and sell certain consumer electronics.  As such, this enterprise exists separate and apart from the pattern of fraudulent acts in which it is alleged to have engaged.  HP alleges that it was this enterprise that conspired to fraudulently obtain money, products, and information from HP, which the enterprise then used to fund the start-up operations of byd:sign Japan and

Eyefi.  (Compl. ¶¶ 60, 71, 77, 79.)  Accordingly, the Court finds that HP's allegations sufficiently state the existence of a RICO enterprise.

### 4.  HP Properly Alleges Proximate Cause

The Moving Defendants finally argue that HP's RICO claim is deficient because it fails to allege that there is a causal relationship between the RICO predicate acts and HP's alleged damages.  To properly allege a civil RICO claim, a plaintiff must allege a proximate causal relationship between the RICO predicate acts and the plaintiff's damages.  *Anza v. Ideal Steel Supply Corp.,* 126 S.Ct. 1991, 1998 (2006); *Old Time Enter. v. Intern. Coffee Corp.*, 862 F.2d 1213, 1218 (5th Cir. 1989).  That is, HP must allege a direct relation between the injury asserted and the alleged predicate acts.  *See Anza*, 126 S. Ct. at 1996.  HP has indeed alleged such a direct relationship between Defendants' predicate acts and HP's injury: HP alleges that the submission of fraudulent invoices resulted in HP's paying for services that it never received, and the fraudulent request for an HP printer deprived HP of its property.  Thus, HP has alleged a financial injury that was proximately caused by the Defendants' mail and wire fraud activities.

Because HP has pleaded facts sufficient to state a cause of action under RICO, the Court finds that the Defendants' motion to dismiss as to HP's civil RICO claim should be denied.

## IV.  HP Adequately Alleges Fraud

The Moving Defendants' challenge HP's allegations of common law fraud against Defendants Iizuka, Kamb, and Thorson on the grounds that HP has failed to state its fraud claim with sufficient particularity, and, to the extent that the fraud claims are based on alleged omissions of material fact, that HP has failed to establish a duty to disclose.

### A.  *HP's Allegations of Fraud*

In its complaint, HP alleges that the Defendants "made material misrepresentations to HP regarding the lines of business at issue in this Complaint."[2]  (Compl. ¶132.)  HP alleges that Kamb arranged for numerous invoices to be paid by HP to byd:sign Japan and byd:sign USA while never revealing their interest in the byd:sign enterprise.  (Compl. ¶ 58–60.)  HP further alleges that the Defendants—including byd:sign Japan, Kamb, and Iizuka—knowingly misrepresented the nature of the services that HP was receiving from the byd:sign enterprise, and misrepresented their roles and interest in the enterprise.  (Compl. ¶ 59–60.)  HP alleges that Thorson materially misrepresented the purpose for which he was obtaining an HP test printer and proprietary printer information.  (Compl. ¶ 77, 79.)  HP finally alleges that it relied on Thorson's misrepresentation and unknowingly provided a

---

[2] The Moving Defendants concede that, for the purpose of their motion to dismiss only, Texas law should apply.  As restated by the Fifth Circuit, the elements of fraud include: (1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury. *Williams*, 112 F.3d at 177.

potential competitor with proprietary information about its printers, as well as a newly designed printer model.  (Id.)

### B.  *HP has Stated its Fraud Claim with Sufficient Particularity*

For the reasons stated above as to the alleged RICO predicates of mail and wire fraud, the Court finds that, as to HP's allegations of fraudulent billing and fraudulently obtaining an HP printer and proprietary printer information, HP has alleged the elements of common law fraud with sufficient particularity.

### C.  *HP has Alleged a Duty to Disclose*

The Defendants also argue that, to the extent that HP's fraud claims rely on Kamb's and Thorson's misrepresentations by silence, HP has not alleged any relationship that would give rise to a duty to speak.  Under Texas law, in the absence of a duty to disclose, mere silence cannot amount to fraud or misrepresentation.  *See Imperial Premium Fin., Inc. v. Khoury,* 129 F.3d 347, 352 (5th Cir. 1998).  Moreover, courts are reluctant to find the existence of special duties in employer/employee relationships.  *See, e.g., City of Midland v. O'Bryant*, 18 S.W.3d 209, 211 (Tex. 2000) (employer does not owe at-will employee a duty of good faith and fair dealing); *Hamilton v. Segue Software Inc.*, 232 F.3d 473 (5th Cir. 2000) (finding that no special relationship existed between employer and employee giving rise to a duty to disclose (citing *O'Bryant*, 18 S.W.3d at 211)).

An employee may, however, owe a fiduciary duty to his employer in certain circumstances.  The term "fiduciary" generally applies "to any person who occupies a

position of peculiar confidence towards another." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 512 (1942); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 199 (Tex. 2002) (citing *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 571, 160 S.W.2d 509, 512 (1942)).  A fiduciary relationship similarly arises in "those informal relations which exist whenever one party trusts and relies upon another." *Kinzbach Tool Co.*, 160 S.W.2d at 512–13; *see Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287–88 (Tex. 1998) ("informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence").  Texas law also recognizes the existence of a fiduciary duty "in those cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Associated Indem. Corp.*, 964 S.W.2d at 288 (quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex.1992)).

In keeping with these principles, Texas courts have held that an employee may owe certain fiduciary duties to his employer when the employee has been placed in a position of peculiar confidence or trust toward the employer.  *See Paschal v. Great Western Drilling, Ltd.*, No. 11-05-00101-CV, 2006 WL 2975312, at *10 (Tex. App.—Eastland Oct. 19, 2006, no pet. h.) (finding that employer may entrust employee with responsibilities that give rise to a fiduciary duty to the employer); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (discussing employee's fiduciary duty to his employer); *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App.—Houston [1st

Dist.] 2003, no pet.) (finding that employee was entrusted with responsibilities that would support a finding that employee owed a fiduciary duty to employer). Indeed, the Texas Supreme Court has recognized that an employee may owe certain fiduciary duties to his employer when acting as the employer's agent in the pursuit of business opportunities on the employer's behalf. *Kinzbach Tool Co.*, 160 S.W.2d at 513; *see Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200–01 (Tex. 2002) (discussing *Kinzbach Tool*). When acting as agents or fiduciaries of an employer, employees may not act for their own account or to the detriment of their principal on matters within the scope of their agency. *Abetter Trucking*, 113 S.W.3d at 512. Finally, an employee/fiduciary also "has a duty to deal openly and to fully disclose to his employer information that affects his employer's business." *Daniel*, 190 S.W.3d at 185 (citing *Abetter Trucking Co.*, 113 S.W.3d at 510).

In this case, HP alleges that it placed a high level of trust and confidence in Kamb and Thorson, locating them in positions of trust and influence with regard to HP's entry into the market for digital televisions. Specifically, HP alleges that Kamb was assigned a position as Director, and later Vice President, of Business Development at Compaq before Compaq's merger with HP in 2002. After the HP/Compaq merger, HP states that Kamb remained with HP in the same substantive position with the same responsibilities that he had held at Compaq. HP also alleges that Thorson, a pre-merger HP employee, was promoted to the position of Director of Strategy and Business Development where he managed a global alliance between HP and another leading technology company. HP alleges that both Kamb

and Thorson held positions of trust and confidence with HP, particularly in regard to the area at issue: the development of a line of flat-panel televisions.  These allegations are sufficient to support a finding that a fiduciary relationship existed between HP and its employees, Kamb and Thorson, such that Kamb and Thorson may have owed a duty to disclose their relationship with the byd:sign enterprise.  The Defendants' motion to dismiss HP's common law fraud claim is denied.

### V.  HP Properly Alleges Breach of Fiduciary Duty

Kamb and Thorson maintain that HP's claim against them for breach of fiduciary duty should be dismissed because HP's allegations do not support an inference that Kamb or Thorson, as employees of HP, owed any duty to HP, or that, if a duty did exist, that the Defendants breached that duty.  Kamb and Thorson also challenge the sufficiency of HP's claim for the imposition of a constructive trust over the assets of Bydesign Japan and Eyefi.

### A.  *HP Alleges the Existence of a Fiduciary Relationship*

As stated in the Court's discussion of HP's fraud claim and misrepresentation by silence, *supra*, the Court finds that HP's allegations are sufficient to support a finding that a fiduciary relationship existed between Kamb, Thorson, and HP.

### B.  *HP Properly Alleges Breach of Duty*

Defendants are correct to argue that an employee is permitted to secretly plan a competing activity without violating any duty to his employer.  *See Johnson*, 73 S.W.3d at

201.  Nevertheless,  there are certain prohibitions on the employee's conduct when it comes to competing ventures.  Among those activities that are prohibited, an employee

> may not appropriate his employer's trade secrets . . . .  He may not solicit his employer's customers while still working for his employer . . . , and he may not carry away certain information, such as lists of customers . . . .  Of course, such a person may not act for his future interests at the expense of his employer by using the employers funds or employees for personal gain or by a course of conduct designed to hurt the employer.

*Johnson*, 73 S.W.3d at 202 (quoting *Augat, Inc. v. Aegis, Inc.*, 565 N.E.2d 415, 419–20 (Mass. 1991)).

HP alleges that Kamb and Thorson, while overseeing HP's development of flat-panel televisions, engaged in actual competition with HP for Kamb and Thorson's own benefit and abused their positions of influence within HP to misappropriate HP resources and proprietary information for the benefit of their competing ventures.  These allegations go beyond simply planning or preparing to compete with HP and, if true, would support a finding that Kamb and Thorson have breached fiduciary duties that they owed to HP.  *See Abetter Trucking*, 113 S.W.3d at 512 (stating that an employee/agent may breach his fiduciary duty to his employer by directly competing with the employer).

### C.  *Constructive Trust*

Finally, as to HP's prayer for imposition of a constructive trust with respect to the Defendants' breach of fiduciary duty, this is a prayer for relief and not a cause of action that is subject to dismissal under Rule 12(b)(6).  Nevertheless, "[a] constructive trust generally arises when a person with legal title to property owes equitable duties to deal with the property for the benefit of another." *Matter of Carolin Paxson Advertising, Inc.*, 938 F.2d 595, 597 (5th Cir. 1991). "Under Texas law, such a trust may be imposed when one obtains property by fraudulent means, when an absolute conveyance of property was performed but not intended, or when a party breaches a fiduciary-like relationship." *Id*.  Here, HP has alleged that Kamb maintains an interest in either Byd:sign Japan, or Eyefi, or both, and that Kamb has obtained property from HP by fraudulent means and through a breach of fiduciary duty.  These allegations, if true, might support imposition of a constructive trust over one or both of these entities.

Accordingly, Kamb's and Thorson's motions to dismiss HP's claim for breach of fiduciary duty is denied.

### VI.  HP Adequately Alleges Constructive Fraud

Kamb and Thorson further challenge HP's claim for constructive fraud on the basis that HP has failed to allege the existence of a special relationship of confidence and trust as required for a constructive fraud claim.

"Constructive fraud is the breach of some legal or equitable duty which, regardless of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 571 (Tex. App.—Dallas 1989, no pet.) (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964)).

As discussed above, HP has pleaded facts which, if true, are sufficient to support a finding that Kamb and Thorson owed and breached certain duties to HP, and did so through the perpetration of certain deceptive acts. Accordingly, the Defendants' motion to dismiss HP's constructive fraud claim is denied.

### VII.  HP Alleges a Lanham Act Claim for Unfair Competition

The Moving Defendants argue that HP fails to state a proper claim under the Lanham Act for unfair competition. Particularly, the Defendants argue that HP fails to allege that the Defendants "made a false statement of fact about the product" at issue; fails to allege that any statements made by the Defendants deceived, or had the potential to deceive, "a substantial segment of potential customers"; fails to allege that any false statement of fact allegedly made by the Defendants tended to influence customer purchasing decisions; and fails to allege that the Defendants misappropriated any of HP's "goods or services."

### A.  *HP's Allegations of Unfair Competition*

HP alleges that the Defendants, by forming and operating their business through the misappropriation of HP's "designs and products," has misrepresented the origin and qualities

of their products and designs.  (Compl. ¶ 143.)  HP further alleges that the Defendants' use

of HP's design in the stream of interstate commerce falsely designates and misrepresents the

origin of Defendants' designs and creates a likelihood of confusion to those third persons to

whom Defendants made such representations.  (Compl. ¶ 144.)  HP also alleges that HP

introduced prototype LCD and PCD televisions at the January 2004 Consumer Electronics

Show in Las Vegas, Nevada, that, unbeknownst to HP, were the same televisions that had

been manufactured for byd:sign with only the front bezels modified to include the HP logo.

(Compl. ¶ 66.)

HP claims that the Defendants, in forming and operating their business through the

misappropriation of HP's designs and products, have misrepresented the origin and qualities

of Defendants' products and designs in violation of Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a).

## B.  *Elements of Claim for Lanham Act Unfair Competition*

The Lanham Act's section pertaining to unfair competition imposes liability on

> [a]ny person who, on or in connection with any goods or services . . . uses in
> commerce any word, term, name, . . . or any false designation of origin, false
> or misleading description of fact, or false or misleading representation of fact,
> which . . . is likely to cause confusion, or to cause mistake, or to deceive as to
> the affiliation, connection, or association of such person with another person,
> or as to the origin, sponsorship, or approval of his or her goods, services, or
> commercial activities by another person[.]

15 U.S.C. § 1125(a)(1)(A).  To bring a cause of action under 15 U.S.C. § 1125(a)(1)(A), HP

must allege that (1) the Defendants made false statements of fact in connection with any

goods or services; (2) those statements deceived, or had the potential to deceive, a substantial

segment of potential customers; (3) the deception was material, in that it tended to influence

purchasing decisions; (4) the Defendants caused their products to enter interstate commerce;

and (5) HP has been or is likely to be injured as a result. *See King v. Ames*, 179 F.3d 370,

373–74 (5th Cir. 1999) (citing *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1500

(5th Cir.1990)).

### C.  *HP States a Claim under the Lanham Act*

HP does state the essential elements of a claim for unfair competition under the

Lanham Act: HP alleges that the Defendants, by forming and operating their business

through the misappropriation of HP's "designs and products," has misrepresented the origin

and qualities of their products and designs.  (Compl. ¶ 143).  HP further alleges that the

Defendants' use of HP's design in the stream of interstate commerce falsely designates and

misrepresents the origin of Defendants' designs and creates a likelihood of confusion to those

third persons to whom Defendants made such representations.  (Compl. ¶ 144.)

As recognized by the Moving Defendants, HP's claim is for a practice known as

"reverse palming off."  "Reverse palming off" occurs when a producer misrepresents

someone else's goods or services as his own. *General Universal Sys., Inc. v. Hal,* 379 F.3d

131, 148 (5th Cir. 2004).  Reverse palming off may be accomplished by "remov[ing] or

obliterat[ing] the original trademark, without authorization, before reselling goods produced

by someone else. . . .  A defendant may also be guilty of reverse palming off by selling or

offering for sale another's product that has been modified slightly and then labeled with a different name." *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990).

Though HP does not directly allege a specific misrepresentation, HP does allege that Defendants manufactured televisions that were the same as HP's prototype televisions, but with different logos on the front bezel. In order to give proper notice of his or her claim, "[a] plaintiff's complaint ordinarily need only be a short and plain statement that gives the defendant notice of what the claim is and the grounds upon which it rests. In most cases, challenges to 'barebones pleadings' are doomed with respect to an attack based on a failure to state a claim." *Colle v. Brazos County*, 981 F.2d 237, 243 (5th Cir. 1993) (citations omitted). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

In this case, liberally construing the complaint in favor of HP, the Court finds that HP's complaint as to its Lanham Act unfair competition claim contains allegations from which an inference may fairly be drawn that evidence on the material points of an unfair competition claim will be introduced at trial. Moreover, the Defendant has not shown that HP can prove no set of facts in support of its claim that would entitle it to relief. *See Conley*, 355 U.S. at 45–46. The Moving Defendants motion to dismiss HP's Lanham Act claim is therefore denied.

## VIII.  HP Alleges a Civil CFAA Claim

The Moving Defendants also challenge whether HP has stated valid claims under the Computer Fraud and Abuse Act ("CFAA").  18 U.S.C. § 1030.  Specifically, the Defendants argue that HP has failed to allege that the Defendants accessed HP computers and information "without authorization."

### A.  *HP's CFAA Allegations*

HP alleges, first, that the Moving Defendants acted without authorization or exceeded their authorized access when they used HP's computers to further their fraudulent scheme against HP while acting as agents of the byd:sign enterprise.  (Compl. ¶ 166.)  In support of HP's allegation that Kamb, McEachern, and Thorson acted without authorization or exceeded their authorized access, HP points to certain sections of confidentiality agreements signed by these defendants, in which each defendant agreed to refrain from disclosing HP's proprietary information.  (Compl. Ex. A, C,  D, and E.)  HP also alleges that Kamb, McEachern, and Thorson each agreed to abide by HP's Standards of Business Conduct, which prohibits employment in a competing business or use of HP computers for personal gain. (Compl. Ex. H.)

Each of the Defendants' confidentiality agreements, though not identical, provide that the employee agrees not to disclose any of HP's "intellectual property," "trade secrets," "technical secrets," or "confidential information" to unauthorized persons.  (Compl. Ex. A, D, and E.)  HP's Standards of Business Conduct provides that an HP employee "may not

work for a competitor of any HP division or operation." (Compl. Ex. H at 2.) The Standards of Business Conduct also provide that "certain messages and materials simply must not be sent or accessed on HP equipment or through HP systems; these include messages for personal gain." (Compl. Ex. H at 14.)

HP has also alleged that Kamb, McEachern, and Thorson attempted to "scrub" their computers thereby damaging or deleting HP information, "an act for which they were not authorized." (Compl. ¶ 167.)

## B. *Elements of a Civil CFAA Claim*

The CFAA, which is primarily a criminal statute, punishes various fraudulent and damaging activities related to the use of computers. An individual may bring a civil action for damage arising from violations of the CFAA, however, under 18 U.S.C. § 1030(g). Section 1030(a)(2)(C) prohibits "intentionally access[ing] a computer without authorization or exceed[ing] authorized access," thereby "obtain[ing] information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Section 1030(a)(4) prohibits the "knowing[] . . . access[ of] a protected computer without authorization," with intent to defraud, if "such conduct furthers the intended fraud and [the violator] obtains anything of value." 18 U.S.C. § 1030(a)(4). Section 1030(a)(5)(i) punishes one who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization." 18 U.S.C. §1030(a)(5)(i). Sections 1030(a)(5)(ii) and

(iii) punishes one who "intentionally accesses a protected computer without authorization" and causes damage as a result of such access.  18 U.S.C. § 1030(a)(5)(ii) and (iii).

The CFAA does not define "authorization" or "authorized access."  It does, however, define "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).

The Moving Defendants argue that HP fails to allege that Kamb, McEachern, and Thorson accessed HP's computers without authorization or in some way exceeded their authorized access.  The Defendants argue that because HP had granted the Defendants access to its computers and information, they cannot be said to have accessed the computers "without authorization" or to have "exceeded their authorized access."

Several courts have concluded that an employee may exceed his authorization or may act without authorization when he obtains proprietary information from his employer's computers and uses that information in a competing venture.  *See International Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006) (reversing dismissal of CFAA claims where employee went into business for himself and used "scrubbing" software to delete all of the files on his company-issued computer); *EF Cultural Travel BV v. Explorica, Inc*., 274 F.3d 577, 582–84 (1st Cir. 2001) (finding that employer was likely to prove access in excess of authorization where former employee obtained proprietary information and then provided that information to his new employer in violation of his confidentiality agreement.);

*Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121 (W.D. Wash. 2000) (finding that the employee acted without authorization when he obtained proprietary information from his former employer's computers for the benefit of his new employer.).

In response, Defendants note that several courts have questioned the key holdings in the above cited cases.  *See, e.g., Lockheed Martin Corp. v. Speed*, 2006 U.S. Dist. Lexis 53108, at *12, *16–*25 (M.D. Fla. August 1, 2006); *Int'l Assoc. of Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp.2d 479, 499 (D. Md. 2005); *Secureinfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 609–10 (E.D. Va. 2005).  Though helpful in assessing the scope of conduct prohibited by the CFAA, these cases do not speak specifically to HP's allegation that the Defendants used employer-provided computers, e-mail, and instant messaging systems to conduct the business of a competing venture.  The cases cited by Moving Defendants involve scenarios in which the defendants, all of whom had signed non-disclosure or confidentiality agreements, were authorized to access certain information on the plaintiffs' respective computer systems.   The defendants each accessed that information and then disclosed that information to third parties in violation of the employees' non-disclosure agreements.   Each court held that because the defendant was indeed authorized to access the information at issue, the defendant could not be said to have acted "without authorization" or "in excess of his or her authorization."  *Lockheed Martin Corp.*, 2006 U.S. Dist. Lexis 53108, at *15; *Werner-Masuda*, 390 F. Supp. 2d at 498–99; *Secureinfo*

*Corp.*, 387 F. Supp. 2d at 609.  As stated by the court in *Werner-Masuda*, "the gravamen of [the plaintiff's] complaint is not so much that [the defendant] improperly accessed the information . . . , but rather what she did with the information once she obtained it."  390 F. Supp. 2d at 499.

In contrast, HP has actually alleged that the Defendants had agreed not only to refrain from disclosing information, but also to refrain from sending or accessing messages on HP's computer systems for personal gain.   By doing so, HP has alleged more than misappropriation of trade secrets, but has alleged actual access without or in excess of authorization.   This is enough to defeat the Moving Defendants' motion to dismiss as to HP's claims under §§ 1030(a)(2) and 1030(a)(4).

HP has also alleged that Kamb, McEachern, and Thorson attempted to "scrub" their computers thereby damaging or deleting HP information, "an act for which they were not authorized," in violation of § 1030(a)(5).  (Compl. ¶ 167.)  Because § 1030(a)(5)(i) punishes *damaging* computers without authorization and not accessing HP's computer systems without authorization, Defendants' arguments do not speak to HP's § 1030(a)(5) claim.  Indeed, HP has alleged that its employees are not authorized to damage HP computers by "scrubbing" as HP alleges was done by several of the Defendants.  Accordingly, the Moving Defendants' motion to dismiss HP's CFAA claim is denied.

## IX.  Conclusion

Because HP has adequately stated claims for which relief may be granted, the Court

finds that the Moving Defendants' Motion to Dismiss should be denied in its entirety.

**It is SO ORDERED.**

**SIGNED this 25th day of January, 2007.**


_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE